## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

     Plaintiff,

        v.                                    CR. NO. 02-117 (PG)

LORENZO CATALAN ROMAN, and
HERNALDO MEDINA-VILLEGAS,

     Defendants.

### OPINION FOLLOWING ORDER

Ruling from the bench on a government motion to compel capital defendants to disclose their penalty-phase experts, the Court held that such disclosure was essential to the government's right of rebuttal under 18 U.S.C. § 3593(c) and pursuant to its inherent powers, ordered defendants to make immediate disclosure. (Docket No. 466, Tr. of 4/19/05 at 52)  In granting the motion, the Court considered and discounted defendants' arguments that they had eschewed reciprocal disclosure under Fed.R.Crim.P. Rule 16, and that in any event, Rule 16 is inapplicable to penalty phase proceedings.  The Court now issues this Opinion to supplement the reasoning stated on the record.

### I. BACKGROUND

Defendants Lorenzo Catalan-Roman and Hernaldo Medina-Villegas were charged on March 14, 2003 by way of a second superseding indictment with crimes including conspiracy, carjacking, armed robbery, and the willful murder of a security guard during the commission of an armed robbery. (Docket No. 85)  The government filed its "Notice of Intent to Seek a Sentence of Death" on July 31, 2003.  (Docket No. 149)  Although defendants maintained that they never engaged in reciprocal discovery, the government disclosed most of its evidence far in advance of trial. (Docket Nos. 150, 169)

The parties requested a 2005 trial date (Docket No. 224, filed April 16, 2004), and jury selection commenced in January of 2005.  On February 9, 2005, the government filed a motion for disclosure (Docket No. 315), formally requesting disclosure by each defendant of all evidence discoverable under Rule 16, as well as notice of any defenses under Rules 12(b), 12.1, 12.2, 12.3 and any witness statements under Rule 26.2(a).  The motion was summarily granted the following day.  (Docket No. 316)

On February 24, jury selection was completed and trial was set to begin on March 7.  (Docket No. 340).  Trial lasted three weeks, culminating on March 22, 2005 when the jury found defendants guilty on all counts.  (Docket Nos. 389 & 390)  The Court had previously agreed to a two-week interregnum between the guilt and penalty phases, originally calendaring the penalty phase for April 11, 2005.  (Docket No. 400)

By April 7, defendants had yet to provide disclosure, and the government filed a motion to compel, stating that they had only received informal notice of defendant Medina's intent to present a mental health expert.  (Docket No. 412)  The Court granted the motion on April 11, under Fed.R.Crim.P. 12.2, finding that Medina failed to comply with Rule 12.2 and that the expert should be excluded, but given the government's willingness to allow the testimony, ordering Medina to make immediate disclosure.  (Docket No. 423)

The penalty phase began on April 12, following a delay provoked by a flurry of last-minute motions.  At that point, defendants had still failed to make any disclosure, and the government filed another motion to compel on April 13.  (Docket No. 438)  Medina ultimately opted not to introduce the mental condition expert.  On April 15, Medina filed a notice of intent, briefly stating that he would offer a ballistics expert and a social worker who would testify to negative family influences affecting his development.  (Docket No. 441)

Pursuant to a Court Order, defendants made partial disclosures regarding the ballistics expert's report, but made no disclosure regarding

the social worker.  On April 19, 2005, the Court orally granted a renewed motion to compel, ordering Medina to disclose the social worker's report.

## II. DISCUSSION

The issue presented is one of narrow compass, concerning whether the Court may compel a capital defendant to notice and disclose non-mental expert mitigation in advance of the sentencing phase, where that defendant spurns reciprocal disclosure.  There is no controlling authority on this issue in the First Circuit, and the Court's study of the relevant federal caselaw has not revealed extensive treatment.

The grave considerations present in capital sentencing demand that procedure and factfinding aspire to a heightened standard of reliability. See Ford v. Wainwright, 477 U.S. 399, 411 (1986).  The Constitution accordingly guarantees an individualized sentencing determination, which is achieved by allowing the jury to consider "all possible relevant information about the individual defendant whose fate it must determine." See U.S. v. Fell, 360 F.3d 135, 143 (2nd Cir. 2004) (quoting Jurek v. Texas, 428 U.S. 262, 276 (1976))(collecting cases).

The Federal Death Penalty Act ("FDPA"), 18 U.S.C. § 3591, et seq., was enacted to realize an individualized sentencing determination in accordance with the constitutional demands elucidated in Gregg v. Georgia, 428 U.S. 153 (1976), which approved of a sentencing procedure where the jury is instructed to weigh individually tailored aggravating and mitigating factors so as to avoid a freakish or arbitrary imposition.  See H.R. Rep. 103-467, at 7 (1994).

FDPA section 3593(a) requires that where the government resolves to seek the death penalty, it must serve on the defendant, a reasonable time before trial, a notice "setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death."  See Battle, 173 F.3d 1343, 1347 (11th Cir. 1999)(determining that while the government must notice the aggravators, it need not disclose the minutiae of its evidence on the

notice of intent)(collecting cases); cf. Gray v. Netherland, 518 U.S. 152, 167-68 (1996) (determining that there is no constitutional right to advance notice of the government's evidence in aggravation at a capital sentencing hearing).    The FDPA creates no reciprocal duty regarding mitigating factors and supplies no other disclosure mechanisms.

        The sentencing procedure is set forth in FDPA section 3593(c), which provides that the government shall open the argument, the defendant shall be permitted a reply, and the government shall be permitted to reply in rebuttal.  Id.  The statute further commands that:

> The government and the defendant shall be permitted
> to rebut any information received at the hearing,
> and shall be given a fair opportunity to present
> argument as to the adequacy of the information to
> establish the existence of any aggravating or
> mitigating factor, and as to the appropriateness in
> the case of imposing a sentence of death.

Id.  Additionally, in key with the constitutional demand that a capital sentence only be imposed upon consideration of all relevant information, Congress specifically released the sentencing phase from the strictures of the Federal Rules of Evidence.  See Fell, 360 F.3d at 143 (the greater quantum of information admissible under the FDPA contributes to a "heightened reliability" in the imposition of the death penalty)(citation omitted).  Section 3593(c) accordingly describes the parties' proffers in terms of "information," not evidence.  Id.

        Congress also prescribed burdens of proof, providing that before a death sentence may be lawfully imposed, assuming threshold findings that the defendant was of age and acted with the requisite intent in committing the capital crime, see 18 U.S.C. § 3591(a), the jury must unanimously find the existence beyond a reasonable doubt of at least one statutory aggravator.  See 18 U.S.C. § 3592(c).  If it so finds, the jury must then unanimously determine whether any non-statutory aggravating factors exist and beyond a reasonable doubt.  See 18 U.S.C. § 3593(d), (e).  The jury next considers whether any mitigating factor is present according to a preponderance standard.  Id.  Finally, the jury must determine whether all

existing aggravating factors sufficiently outweigh all applicable mitigating factors, thereby justifying a sentence of death.  18 U.S.C. § 3593(e).  No mention is made of the Federal Rules of Criminal Procedure, except for the express withdrawal of Fed.R.Crim.P. 32, thereby eliminating the pre-sentence report requirement.

Inasmuch as the FDPA is otherwise silent as to procedure, it clearly does not purport to provide a comprehensive penalty phase procedure, and it follows that Congress left the fashioning of such procedure, including disclosure matters, to the courts.  See U.S. v. Beckford, 962 F.Supp. 748, 757 (E.D.Va. 1997).  That premise was never contested by either party.  Instead, the government assumed that the Rules of Criminal Procedure generally applied, specifically Rule 16, which is the primary source of disclosure procedure.  Having made full disclosure of its case far in advance of the guilt phase, the government repeatedly requested that defendants be compelled to disclose their experts under Rule 16 so that it could adequately prepare for rebuttal.  On the other hand, defendants steadfastly refused to reciprocate, claiming that Fed.R.Crim.P. 16 is inapplicable to the sentencing phase.  Their argument was based on the language of Rule 16 which does not explicitly extend to the sentencing phase, and on the implication stemming from the fact that Rule 16 was not amended in 2002 for application during sentencing, unlike Rule 12.2.  In the alternative, defendants argued that because the mechanism for Rule 16 disclosure is reciprocal and triggered only at a defendant's behest, they could not be compelled to reciprocate.

The Court recognizes that defendants' arguments are not devoid of merit.  In relevant part, Rule 16 provides that:

> The defendant must, at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial, *if--*
>
> (i) the defendant requests disclosure under subdivision (a)(1)(G) and the government complies; or

> (ii) the defendant has given notice under Rule
> 12.2(b) of an intent to present expert testimony on
> the defendant's mental condition.
>
> This summary must describe the witness's opinions,
> the bases and reasons for those opinions, and the
> witness's qualifications.

Fed.R.Crim.P. 16(b)(1)(C) (emphasis supplied). Reciprocal disclosure under Rule 16 thus occurs at a defendant's behest. "In the absence of a strong showing of state interests to the contrary, discovery must be a two-way street." Wardius v. Oregon, 412 U.S. 470, 475 (1973); United States v. Carrasquillo-Plaza, 873 F.2d 10, 12 (1st Cir. 1989).[1]

It has been held that Fed.R.Crim.P. 16(b)(1) does not provide authority for notice and reciprocal discovery of a mental expert relevant to the penalty phase of capital murder trial. See U.S. v. Beckford, 962 F.Supp. 748, 754 (E.D.Va. 1997) (finding that neither Rule 16 nor Rule 12.2 applies, but authorizing mental examination pursuant to inherent powers) (collecting cases). The language of Rule 16 indeed appears limited to the guilt phase, inasmuch as it refers to testimony that "defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial." See Fed.R.Crim.P. 16(b)(1)(C); Beckford, 962 F.Supp. at 754 (noting that the "rather explicit language" of Rule 16 limits its application to the guilt phase of a trial). Furthermore, the emphasis of the language is on disclosure of evidence admissible under the Rules of Evidence, the application of which Rules the FDPA suspends during the sentencing phase. See 18 U.S.C. § 3593(c).

Defendants also underscored that while Fed.R.Crim.P. 12.2 was amended in 2002 to explicitly extend its application to a capital sentencing proceeding, Rule 16 was not similarly amended. Rule 12.2(b)

---

[1]The prosecution may, however, gratuitously disclose. See Advisory Committee Notes to 1974 Amendment to Rule 16; ABA Criminal Justice Standard 11-2.1(a)(iv), 11-2.1(a)(ii) (both prosecution and defense should disclose reports or written statements of their experts including results of physical or mental examinations and of scientific tests, experiments). The government must disclose evidence tending to exculpate defendant. <u>See e.g.</u> <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) (prosecution's suppression of evidence favorable to defendant where evidence is material either to guilt or to punishment constitutes a violation of due process).

provides for pretrial notice of any intent to use expert evidence of a mental condition as mitigation during capital sentencing, and defendants implied that because this amendment is the only explicit defense disclosure obligation during the sentencing phase, it circumscribes the disclosure available to the government.

Although defendants' arguments are appealing, they are ultimately unpersuasive. It is not clear that the terms of Rule 16 cannot extend to the sentencing phase. While the Rule is drafted in terms of the admissibility of certain evidence for use during "trial," that language is still reconcilable with penalty phase disclosure because sentencing is part of one "bifurcated" trial. See Gregg v. Georgia, 428 U.S. at 154 (characterizing the sentencing scheme on which the FDPA is based as a single "bifurcated trial."); U.S. v. Acosta-Martinez, 252 F.3d 13, 17 (1st Cir. 2001)("a bifurcated proceeding"); U.S. v. Webster, 162 F.3d 308, 346 (5th Cir. 1998) ("the bifurcated trial"); U.S. v. Furrow, 100 F.Supp.2d 1170, 1173 (C.D.Cal. 2000)("a bifurcated trial"); cf. U.S. v. Green, 2005 WL 1119791, at *3 (1st Cir. 2005) (the "sentencing process ... is an integral aspect" of a criminal case and "is not in any sense independent of the main course of the prosecution")(citation omitted).

Furthermore, "[t]he Federal Rules of Criminal Procedure apply to sentencing hearings." Webster, 162 F.3d at 346. Fed.R.Crim.P. 1 extends the application of the Rules to "all criminal proceedings in the courts of the United States...." Id. In addition, Fed.R.Crim.P. 54 excludes certain proceedings from the application of the Rules of Criminal Procedure, but not sentencing hearings. Id. Lastly, in accordance with the canon of *expressio unis*, the waiver in FDPA section 3593(c) of Fed.R.Crim.P. 32(c)'s pre-sentence report requirement "suggests the negative implication that the Rules of Criminal Procedure usually do apply to sentencing hearings under the FDPA." Id. It is also of import that unlike the Federal Rules of Evidence, the FDPA does not specifically abrogate the Rules of Criminal Procedure.

More importantly, many of the policies of Rule 16 extend to the penalty phase, becoming even more potent. While policies such as the promotion of an informed guilty plea-practice are largely moot by the sentencing phase, others such as contributing to the fair and efficient administration of justice, avoiding surprise and ensuring an informed sentencing determination implement the awesome constitutional protections accorded during capital sentencing proceedings. See generally the Advisory Committee Notes to 1974 Amendment to Rule 16.

Although the essential policy of facilitating the truth-seeking process is diminished during the sentencing phase because the jury has already rendered its guilty verdict, there nevertheless remain myriad factual issues during the sentencing phase. It is no less imperative that the facts affecting a sentencing determination be as trustworthy as those informing a guilty verdict, and it is beyond dispute that the adequate preparation eased by early disclosure will contribute to the truth-seeking process, resulting in a more reliable sentencing determination.

Moreover, a liberal system of reciprocal discovery has been a central feature of modern criminal practice in both the federal and state courts. Williams v. Florida, 399 U.S. 78, 81-82 (1970). The Supreme Court has also described notice requirements as "a salutary development which, by increasing the evidence available to both parties, enhances the fairness of the adversary system." Michigan v. Lucas, 500 U.S. 145, 151 (1991) (quoting Wardius v. Oregon, 412 U.S. 470, 474 (1973)). Given these considerations, a capital defendant who desires reciprocal Rule 16 disclosure ought not be deprived of it.

As to defendants' second argument, it is of neutral import that unlike Rule 12.2, Rule 16 was never amended for direct application during the penalty phase. Defendants failed to acknowledge that the Rule 12.2 amendment simply codified the rationale of the various courts that ordered penalty-phase disclosure of medical experts pursuant to their inherent power. See 2002 Amendments to Fed.R.Crim.P. 12.2 (adopting the view of several courts which extended the notice requirement to a defendant who

intends to offer expert evidence of a mental condition during a capital sentencing proceeding). As such, the fact of the Rule 12.2 amendment simply proves too much.

Defendants also argued that even if Rule 16 generally applies, it does not apply in this case because they never invoked its reciprocal mechanisms. The Court will credit defendants' assertion,[2] but their decision to follow a closefisted strategy does not put an end to the matter of disclosure. Regardless of whether Rule 16 is inapplicable on its own terms or because defendants never triggered it, it is well-settled that district courts have inherent power to make and enforce reasonable rules of procedure, including disclosure rules. See Carlisle v. United States, 517 U.S. 416, 425-26 (1996) (noting that "federal courts may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress"); U.S. v. Sampson, 335 F.Supp.2d 166, 200-201 (D.Mass. 2004)("If the federal courts have supervisory authority to formulate procedural rules not specifically required by the Constitution or the Congress to preserve the integrity of the judiciary by ensuring that a conviction rests on appropriate considerations validly before the jury, that authority must extend to the sentencing phase of a trial as well.")(internal citations and quotations omitted); United States v. Beckford, 962 F.Supp. 748, 754 (E.D.Va. 1997); U.S. v. Kloepper, 725 F.Supp. 638, 645 (D.Mass. 1989).

Where faced with procedural gaps arising under the FDPA because of its silence regarding disclosure, courts are crafting appropriate procedures pursuant to their inherent powers, importing standards from the Federal Rules of Criminal Procedure. See e.g. Sampson, 335 F.Supp.2d at 200 (Fed.R.Crim.P. 29 is not directly applicable to the penalty phase, but

---

[2] Defendants requested at least some disclosure prior to the guilt phase. See Docket No. 169. It may be that defendants meant they never requested reciprocal disclosure relevant to the sentencing as opposed to guilt. The Court finds the distinction academic, but because this controversy turns on expert disclosure, the Court will accept defendants' assertion that they refrained from specifically invoking reciprocal expert disclosure.

applying similar procedure and standard pursuant to inherent powers)(collecting cases); cf. State v. Brown, 132 Wash.2d 529, 629, 940 P.2d 546, 598 (1997) (determining that discovery rules should be extended to death penalty hearings); People v. Lee, 196 Ill.2d 368,388, 752 N.E.2d 1017,1028, 256 Ill.Dec. 775, 786 (2001) (determining that trial court may grant pretrial discovery of defense information, whether for use at the guilt phase of trial or at the death penalty hearing); State v. Braxton, 352 N.C. 158, 211, 531 S.E.2d 428, 459 (2000) (concluding that the trial court properly exercised inherent authority to order disclosure of defendant's mental examination reports five working days in advance of testimony); People v. Mitchell, 5 Cal.4th 1229, 1236, 859 P.2d 102, 107 (1993) (extending reciprocal pretrial discovery to penalty phase of capital trial).

This inherent power was codified in Fed.R.Crim.P. 57(b), which provides that "a district judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district." The Advisory Notes to Rule 16 itself indicate that "[t]he rule is intended to prescribe the minimum amount of discovery to which the parties are entitled. It is not intended to limit the judge's discretion to order broader discovery in appropriate cases." See Beckford, 962 F.Supp. at 756 -757(quoting Advisory Committee Note to Rule 16, reprinted in 62 F.R.D. 271, 308 (1974)). With the premium placed upon accuracy and fairness in a capital penalty phase, broader discovery would be more than "appropriate." See id.

The Court accordingly finds in 18 U.S.C. § 3593(c) a statutory basis to assert its inherent authority to require notice of any expert mitigation that defendant plans to offer during the penalty phase, regardless of whether it concerns a mental condition under Rule 12.2. Congress specifically endowed both parties with a fair right of rebuttal, see 18 U.S.C. § 3593(c), a right which would be rendered meaningless against expert testimony without the opportunity for adequate preparation. The importance of Congress' explicit provision of a fair right of rebuttal

cannot be overstated, particularly where the decision of whether to permit rebuttal is ordinarily consigned to the discretion of the trial court. See U.S. v. Wood, 982 F.2d 1, 4 (1st Cir. 1992) (citations omitted).

"Rebuttal evidence is defined as 'evidence given to explain, repel, counteract, or disprove facts given in evidence by the opposing party. That which tends to explain or contradict or disprove evidence offered by the adverse party.'" U.S. v. Stitt, 250 F.3d 878, 897 (4th Cir. 2001) (quoting Black's Law Dictionary 1267 (6th ed.1990)); cf. U.S. v. Sebaggala, 256 F.3d 59, 66 (1st Cir. 2001).

Given the explicit conferral of a fair right of rebuttal, it follows that it must be a meaningful right to rebut.  See e.g. U.S. v. Haworth, 942 F.Supp. 1406, 1408 (D.N.M. 1996) (finding that government must have a "meaningful" opportunity to rebut, and ordering mental examination of defendant so as not to "sharply curtail" government's ability to rebut); Beckford, 962 F.Supp. at 758 (holding that government's ability to rebut defendant's evidence of mental condition would be "sharply curtailed, if not entirely eviscerated," without notice of a mental health defense and an opportunity to examine defendant); U.S. v. Vest, 905 F.Supp. 651, 653 (W.D.Mo. 1995) (unless government expert is permitted to examine defendant regarding his mental condition defense, "the provision authorizing rebuttal is rendered meaningless"); U.S. v. Minerd, 197 F.Supp.2d 272, 275 (W.D.Pa. 2002) (government's ability to rebut information presented in mitigation would be "rendered meaningless" if a government's mental expert were not permitted to examine the defendant); U.S. v. Edelin, 134 F.Supp.2d 45, 53 (D.D.C. 2001)("The Court finds that some information must be provided to the Government's expert witnesses or the resulting testimony will be meaningless or misleading.").

In light of the prosecution's right of rebuttal, the Court found defendants' insistence on springing expert testimony regarding their backgrounds and crime scene ballistics unreasonable.  Be it expert testimony regarding a medical condition, or crime scene ballistics or how defendants' background informs their behavior, it takes time to develop

expert testimony in rebuttal.  In addition, the rebuttal expert also requires access to the basis of the other expert's conclusions in order to effectively test them.  And the importance of the thorough and effective rebuttal of an expert, to whom the jury may give undue credence, cannot be minimized.  See generally U.S. v. Rosales, 19 F.3d 763, 766 (1st Cir. 1994)(where one expert testifies about the credibility of another witness, the "proffered expert testimony [c]ould create a substantial danger of undue prejudice ... because of its aura of special reliability and trustworthiness"); U.S. v. Hines, 55 F.Supp.2d 62, 64 (D.Mass. 1999) ("[a] certain patina attaches to an expert's testimony unlike any other witness; this is "science," a professional's judgment, the jury may think, and give more credence to the testimony than it may deserve.").  Hence, disclosure is warranted in order to allow the government to acquire and/or develop its own expert testimony if there is to be some semblance of meaningful expert rebuttal.

Of course, the trial court must do all it can to ensure that each defendant receives a fair trial.  Pretrial discovery of defense information, whether for use at the guilt phase of trial or at the death penalty hearing, remains subject to constitutional limitations and limitations based on attorney-client or other privilege.  See Estelle v. Smith, 451 U.S. 454, 101 (1981) (finding that defendant became "deluded instrument of his own execution" in violation of his Fifth Amendment rights where his incriminating statements made during a court-ordered medical examination were offered against him during sentencing).  Thus, even though "the defendant's conviction means that the presumption of innocence no longer applies," Deck v. Missouri, 2005 WL 1200394, at *1 (2006), in granting any disclosure request by the government, the trial court must safeguard the defendant's constitutional rights during sentencing.  See Gregg, 428 U.S. at 187.

However, although the Constitution prohibits sentencing a defendant to death through the use of evidence he unwittingly provides, there is no constitutional violation by requiring a defendant to disclose mitigating

information he intended to offer the jury anyway. "Nothing in the Fifth Amendment privilege entitles a defendant as a matter of constitutional right to await the end of the State's case before announcing the nature of his defense, any more than it entitles him to await the jury's verdict on the State's case-in-chief before deciding whether or not to take the stand himself." Williams, 399 U.S. at 85.

As per the Supreme Court's observation in Williams, accelerating disclosure of a particular defense does not violate a defendant's constitutional rights, because a criminal trial is not "a poker game in which players enjoy an absolute right always to conceal their cards until played." Williams, 399 U.S. at 82 (requiring advance notice of defendants' intent to present an alibi defense "by itself in no way affected [the defendant's] crucial decision to call alibi witnesses.... At most, the rule only compelled [the defendant] to accelerate the timing of his disclosure, forcing him to divulge at an earlier date information that [he] planned to divulge at trial."). Similarly, ordering defendants to disclose their expert mitigation while the penalty phase was already underway merely required them to disclose what they would have revealed anyway in a few days.

This holding resonates with the heightened reliability to which a capital sentencing proceeding must aspire. See Ford v. Wainwright, 477 U.S. 399, 411 (1986). It is crucial that the sentencing authority possess the fullest information possible respecting the defendant's life, character, criminal record and the circumstances of the particular offense. See Jurek, 428 U.S. at 276; Fell, 360 F.3d at 143 (the more information, the better)(collecting cases). However, the need for testing the fundamental reliability of the information before the jury is crucial, and allowing disclosure furthers the goal of heightened reliability by facilitating the separation of the wheat from the shaft through the adversarial process. Such disclosure is also consistent with the promotion of other goals such as minimizing surprise, accelerating the

sentencing process and avoiding continuances.  See Advisory Committee Notes to 1974 Amendment to Rule 16.

Of course, the *punctus temporis* of expert disclosure must remain in the trial court's discretion.  While expert disclosure should be made as early as is reasonably possible, there may be circumstances justifying a deferral, instead calling for a continuance to allow the government time to prepare its rebuttal.  Here, at the time the government moved to compel defendants' disclosure, the reasonable alternatives available to this Court for animating and securing the government's right of rebuttal were ordering disclosure or granting the government a continuance.  Because no right of defendants was violated by requiring expert disclosure, and because disclosure would contribute to a more reliable determination while implementing the policies discussed above, the Court granted the motion to compel.

### III. CONCLUSION

Rule 16 reciprocal disclosure should be available to those capital defendants who desire it in preparation for both the guilt and penalty phases.  Where the defense insists on a closefisted strategy dependent on non-disclosure, however, it remains within the trial court's inherent authority to compel at least expert disclosure.  Given the government's statutory right of rebuttal, the necessity of ensuring a fair and efficient penalty phase, and the constitutional demands of heightened reliability in the sentencing determination, the Court granted the government's motion to compel expert defense disclosure.

**SO ORDERED.**

In San Juan, Puerto Rico, June 7, 2005.

S/ JUAN M. PÉREZ-GIMÉNEZ
JUAN M. PÉREZ-GIMÉNEZ
UNITED STATES DISTRICT JUDGE